Hillsborough, }
June 24, 1937. }

JAMES GREALISH, *by his mother and next friend,*

*v.*

PERCY M. ODELL.

*Chretien & Craig (Mr. Craig* orally), for the plaintiff.

*Wilfred A. Laflamme* and *McLane, Davis & Carleton (Mr. Carleton* orally), for the defendant.

PAGE, J. The plaintiff, a boy a little over fourteen, with another boy named Swanson, was traveling westerly on Hanover Street in Manchester at about half past five in the afternoon of January 19, 1934. Each boy had a sled, which he used for coasting whenever that was possible. The accident happened near the lower end of a downward slope. The plaintiff sometimes coasted in a lying position and sometimes kneeling on his sled. Generally he steered along the shoulder or gutter, a space two to four feet wide between the northerly line of the surfacing of the street and the northerly snowbank. Now and then his sled swerved onto the surfacing, which was icy.

At one such time the plaintiff was warned by Swanson, who was about thirty feet behind him, that a car was coming. Grealish arose from his sled and planted his feet, the left on the surfacing of the highway, the right in the gutter, with the sled wholly on the surfacing at his left. He was trying to pick up his sled when he was struck by the right headlight of the defendant's car, which was going in a westerly direction.

There was no evidence to warrant a finding that the speed at which the defendant was driving was causally negligent. The Swanson boy said that it was "fast," but the only specific testimony consisted of estimates by the defendant and a disinterested witness ranging from twenty to thirty miles an hour. Either speed was within the limit prescribed by the statute as *prima facie* reasonable, since, for all that appears, the provision of P. L., c. 103, s. 18, VII, as amended by Laws 1927, c. 76, s. 2 and Laws 1929, c. 43, s. 1, applies. The defendant stopped his car on an icy road within thirty feet, which indicates reasonable speed under the circumstances. As far as appears, the defendant had no duty to sound his horn (P. L., c. 103, ss. 10, 13), and his omission of that signal is not to be counted as legal fault.

There was no fault of the defendant unless in his failure to see the plaintiff in time to take saving action. Since he actually saw him for the first time as he arose immediately in front of the headlight the doctrine of the last clear chance has no application. *Clark* v. *Railroad*, 87 N. H. 36. Unless the defendant ought to have seen the plaintiff enough sooner to avoid hitting him, there can be no recovery.

The defendant had seen Swanson just as he passed him, and immediately after Swanson had got up from his sled; he saw the plaintiff as he was in the act of rising. At that time, the defendant's view was affected by three factors: (1) the time was "between daylight and darkness," when vision is more difficult than after dark; (2) the

plaintiff, when he was struck, had passed a street-light and left it a pole and a half behind; (3) the plaintiff wore khaki pants and a dark blue sweater, and the snow was not clean. The defendant had just met and seen eight to twelve pedestrians on the north side of the road, walking in an easterly direction and facing him.

The fact that the defendant saw pedestrians under such circumstances does not warrant the inference that if he had exercised the watchfulness of average prudence he would have seen a boy darkly clothed, kneeling on a sled against a background of unclean snow, with his heels to the defendant. The fact that the defendant saw Swanson after he got to his feet in season to avoid him, does not lead to the conclusion that a driver of average prudence, under the same circumstances, would have seen the plaintiff long enough before he got to his feet to avoid hitting him. The traveling of pedestrians on their own left-hand side of the road gave the plaintiff no warning that coasters might be moving along their right-hand side of the road.

The defendant testified that he had no reason to expect the presence of coasters. There being no evidence to the contrary, he cannot be charged with the duty to anticipate the presence of the plaintiff under the existing circumstances. Only by pure guess could it be found that a driver of average prudence could and would, given the same visual conditions, have seen the plaintiff sooner than the defendant did.

Since no fault of the defendant could have been found to be the cause of the plaintiff's injuries, the motion for a directed verdict should have been granted.

*Judgment for the defendant.*

All concurred.