DOROTHY GREEN, *Adm'x v.* RAYMOND J. BOND.

*Sewall & Varney (Mr. Varney* orally), for the plaintiff.

*Waldron & Boynton (Mr. Waldron* orally), for the defendant.

BURQUE, J.   Plaintiff's intestate, a retired physician (hereinafter referred to as the doctor), on October 24, 1941, at about 5:15 P.M. standard time, parked his car on the northerly side of Miller Avenue in Portsmouth.   It was dark at the time, and there were cars parked on both sides of the avenue.   There were also three cars in line, southerly of the cars parked on the northerly side.   These three cars were stopped, waiting for the traffic light to change in order to allow them to enter Middle Street, the main artery from Portsmouth to Boston, known as route U. S. 1.   Other cars were following in the rear of these three cars, and were coming toward the defendant. Miller Avenue is also an artery that leads to Boston, *via* the beaches, and is known as route U. S. 1A.   Both streets are busy thoroughfares, and the traffic, usually and regularly heavy at the intersection of Middle Street and Miller Avenue (which dead ends at Middle Street), is controlled by traffic lights.   The doctor got out of the right hand (southerly) side of his car into the avenue.   A passenger, Mr. Clark, who had been riding with the doctor got out on the sidewalk (northerly) side and walked around the rear of the car.   As he approached the doctor, the latter was in the act of proceeding across the road to the southerly side thereof, intending to go to the Masonic Temple located on that side of the avenue.   Mr. Clark stopped him two or three times from proceeding across.   Then the doctor asked Mr. Clark to get a jackknife which he had left on the seat of his car. As Mr. Clark turned to go and get the knife, the doctor started across the road.   He walked back of the third car which was stopped in line south of the parked cars on the north side of the avenue, and proceeded diagonally across the east bound lane.   It is claimed he had reached a point about three or four feet from the southerly curbing when defendant drove along and came in contact with the doctor.   Defendant came from Middle Street and was proceeding at a speed of about 15 miles per hour.   He saw a form about two or three feet ahead of him.   He applied his brakes and swerved his car southerly to his right.   He stopped within half the length of his car, his front right wheel landing on the curbing.   The point of contact was the left side of the front mudguard.   The doctor was knocked down on his back, his feet facing defendant's car.   His body was about the center of defendant's car when picked up.

Miller Avenue is 28.7 feet wide from curb to curb. Automobiles are about 6 feet wide. Defendant says he was driving his car about a foot distant from the cars parked on the south side, and about 2½ feet away from the line of cars waiting for the light, which must necessarily be so. He was paying attention to his driving.

On such a state of facts it is probably doubtful if the defendant can be charged with negligence. There is no evidence that defendant could and should have seen the doctor in time to have avoided the accident. The record does not disclose at what gait the doctor proceeded across the avenue, what kind of clothes he was wearing, nor any other circumstance from which it can be said the defendant had an opportunity to observe and discover the doctor in his path before defendant says he did and in time to avoid the contact. It does not appear that the defendant, who was not familiar with the entrance to Masonic Temple, had or should have had any reason to anticipate the presence of any pedestrian in the avenue when and at the point where the accident happened. It cannot be said defendant's speed was excessive or unreasonable; it was within the statutory limit, and thus *prima facie* lawful. Laws 1937, *c.* 125, *s.* 2. (R. L. *c.* 119, *s.* 30). In the absence of evidence that the defendant's speed was causal, or that defendant ought to have seen the decedent sooner and thus have been able to avoid the collision, the action ordinarily could not be maintained. *Grealish* v. *Odell*, 89 N. H. 130. But we do not have to decide whether the evidence fails to prove negligence on the part of the defendant, for it conclusively appears that the doctor was contributorily negligent.

Though 83 years of age, the doctor was in full possession of his faculties, very active, in good health, of good hearing and good eyesight. It was dark, lights of moving cars were on, and so were the lights of the defendant's car. A casual look on the part of the doctor in the direction from which defendant was approaching, the only direction from which traffic in the lane traversed by him could be expected, would have disclosed the presence of the oncoming car, which from the evidence was probably 65 feet away when the doctor started to cross. He came from close behind the third parked car waiting in line to proceed westerly and went diagonally across the lane, thus having his back partially turned toward cars approaching from the west.

There is no evidence that before and while traveling the distance of approximately 9 feet, the clear width of the lane, he used any care at all for his own safety; and that care, if exercised, would have been

availing is obvious. The evidence in fact, as already appears, is to the effect that he did not look for oncoming traffic from either direction, as he had been stopped two or three times in his attempt to proceed across the road, thus leading to the conclusion that he was not attentive to the dangerous situation confronting him. His behavior in the face of apparent danger of which he must have been aware can only be characterized as negligence precluding recovery. *Jackson* v. *Smart*, 89 N. H. 174, 177, and cases cited. The nonsuit was properly granted.

*Judgment for the defendant.*

All concurred.